UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 24-105** |
| v. | * | SECTION: "D"(1) |
| **RYAN J. HARRIS**<br>a/k/a "Red" | * | |
| | * * * | |

## FACTUAL BASIS

The defendant, **RYAN J. HARRIS, a/k/a "Red,"** has agreed to plead guilty. Should this matter proceed to trial, the United States would prove beyond a reasonable doubt, through credible testimony and reliable evidence, the following facts. Unless stated otherwise, the following acts occurred within the jurisdiction of the Eastern District of Louisiana.

*Staged Collision Scheme*

**HARRIS** was a "slammer," meaning that he drove automobiles and intentionally collided with 18-wheeler tractor-trailers and other vehicles in order to stage collisions. **HARRIS** and his co-conspirators pursued fraudulent lawsuits and insurance claims based on the collisions. The staged collision scheme included law firms, attorneys, and others associated with the law firms and attorneys who handled fraudulent lawsuits knowing they were based on staged collisions. Among others, **HARRIS** directed passengers in staged collisions to Sean D. Alfortish ("Alfortish"), Vanessa Motta ("Motta"), and Motta Law, LLC ("Motta Law"), for representation in fraudulent lawsuits. Alfortish, Motta, and Motta Law paid **HARRIS**, and they knew the passengers **HARRIS** directed to them had been involved in staged collisions.

Leon M. Parker, a/k/a "Chunky," ("Parker") had a romantic relationship with **HARRIS's** mother. In January 2016, Parker, Harris's mother, and Harris's brother were involved in a staged collision. The collision was staged by Cornelius Garrison, a/k/a "Poonie," a/k/a "Slim"

AUSA *[initials]*
Defendant *[initials]*
Defense Counsel *[initials]*

("Garrison"), another slammer. Following the January 2016 collision, **HARRIS** staged additional collisions with Garrison. Passengers in **HARRIS** and Garrison's staged collisions were directed to Jason Giles ("Giles") and The King Firm, LLC ("The King Firm"), among other attorneys and law firms. Giles and The King Firm paid Garrison, and they were aware the passengers **HARRIS** and Garrison directed to them had been involved in staged collisions.

In 2017, **HARRIS** began staging collisions without Garrison. **HARRIS** directed passengers from collisions he staged to Alfortish, Motta, and Motta Law for representation in fraudulent lawsuits. **HARRIS** obtained Alfortish's contact information from Garrison, who also directed passengers from staged collisions to Alfortish, Motta, and Motta Law for representation in fraudulent lawsuits. **HARRIS** also directed individuals involved in staged collisions to file fraudulent insurance claims. It was reasonably foreseeable to **HARRIS** that the fraudulent insurance lawsuits and claims would involve the use of interstate wirings and the mail, including through phone calls, emails, the filing of legal documents, and the mailing of settlement checks.

**HARRIS**, Garrison, Alfortish, Motta, Motta Law, Parker, and others were involved in numerous staged collisions, fraudulent lawsuits, and fraudulent insurance claims, including:

a.  On January 10, 2017, **HARRIS**, Parker, Jovanna Gardner ("Gardner"), and others staged a collision involving a Dodge Challenger and an Audi A4. Gardner was in a romantic relationship with **HARRIS**. **HARRIS**, Parker, Gardner, and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

b.  On April 12, 2017, Garrison, Carl G. Morgan ("Morgan"), and others staged a collision involving a tractor-trailer and a Lincoln Town Car. Morgan was a member of **HARRIS's** family. Alfortish, Motta, Motta Law, Morgan, Garrison, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

2



AUSA
Defendant
Defense Counsel

c. On April 24, 2017, **HARRIS**, Garrison, and others staged a collision involving a tractor-trailer and a Nissan Sentra. **HARRIS**, Alfortish, Motta, Motta Law, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

d. On November 13, 2017, **HARRIS** and others staged a collision involving a tractor-trailer and a Chevrolet Impala. **HARRIS**, Alfortish, Motta, Motta Law, and others conspired to file and pursue a fraudulent lawsuit based on the staged collision.

e. On August 27, 2020, **HARRIS**, Timara N. Lawrence ("Lawrence"), and others staged a collision involving a Buick Envision and a Ford Taurus. Lawrence was in a romantic relationship with **HARRIS**. As part of the staged collision scheme, Lawrence provided **HARRIS** with stolen personal identifying information to use in a false insurance claim. **HARRIS**, Lawrence, and others conspired to file and pursue a fraudulent insurance claim seeking reimbursement for alleged damages and expenses based on the staged collision. In furtherance of the scheme to defraud, **HARRIS** had an associate of his call State Farm Insurance Company ("State Farm") to fraudulently report the staged collision as a legitimate car accident in order to initiate a fraudulent claim. **HARRIS** and his coconspirators thereafter obtained reimbursement from State Farm for damages based on this fraudulent claim. State Farm is headquartered in Illinois, and this phone call was initiated in New Orleans; therefore, this phone call was an interstate wiring and affected interstate commerce.

f. On September 21, 2021, **HARRIS** and others staged a collision involving a Mercedes-Benz GLB 250 and a Toyota Corolla. **HARRIS** and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

g. On December 22, 2021, **HARRIS**, Parker, and others staged a collision involving a Genesis G80 and a Toyota Corolla. **HARRIS**, Alfortish**,** Motta**,** Motta Law**,** Parker, and others

AUSA
Defendant
Defense Counsel

conspired to file and pursue a fraudulent lawsuit based on the staged collision.

      h.      On May 1, 2022, **HARRIS** and others staged a collision involving an Infiniti Q60 and a BMW X1. **HARRIS** and others conspired to file and pursue a fraudulent insurance claim based on the staged collision.

Alfortish, Motta, and Motta Law paid **HARRIS** via cash and checks for bringing them staged collisions. To conceal the true nature of the payments to **HARRIS**, that is, remuneration for the staged collisions, Alfortish, Motta, and Motta Law often categorized the payments to **HARRIS** as "loans" or "advances" on future settlements. Payments to **HARRIS** were also concealed as "professional fees." These payments were funneled through entities controlled by Alfortish. Alfortish instructed **HARRIS** that, if he were ever questioned about why Alfortish, Motta, and Motta Law were paying him, he should lie and say that the payments were for a reason unrelated to the staged collisions, including to compensate **HARRIS** for "construction." Harris understood the unlawful purpose of this scheme and willfully joined it.

*Garrison's Murder*

In 2020, **HARRIS**, Alfortish, Motta, Parker, and others learned that Garrison was cooperating with the federal criminal investigation into the staged collision scheme. Garrison's cooperation was problematic for Alfortish and Motta because they had paid Garrison for staged collisions. Similarly, Garrison's cooperation was problematic for **HARRIS** and Parker because Garrison had assisted them with staging collisions, including Parker's staged collision in January 2016. Alfortish told **HARRIS** that he and Motta had offered to pay Garrison to convince Garrison not to cooperate with the investigation. Additionally, Alfortish, Motta, and Parker commented to **HARRIS** that Garrison was a "rat" and a "snitch" and that it would be better if Garrison were dead. Alfortish asked **HARRIS** if he knew anyone who could assist Alfortish in

AUSA
Defendant R.H.
Defense Counsel

killing Garrison. **HARRIS** arranged for Alfortish to meet Parker. **HARRIS** knew that, by arranging the meeting between Alfortish and Parker, he was assisting Alfortish and Parker's scheme to murder Garrison.

The meeting between Alfortish and Parker took place at **HARRIS's** automotive repair shop. During the meeting, Alfortish offered to pay Parker to murder Garrison. Following the meeting, **HARRIS** met with Parker multiple times and provided Parker with a "burner" phone for Parker to use to commit the murder. **HARRIS** also recruited his romantic partner Jovanna Gardner to assist **HARRIS** and Parker with tricking Garrison into being at his home at a particular time. However, **HARRIS** did not tell Gardner that she would be assisting with a murder. Rather, Gardner believed she was assisting **HARRIS** and Parker in a scheme to pay Garrison to convince Garrison not to cooperate with the investigation. **HARRIS** knew that, by providing Parker with the "burner" phone and recruiting Gardner to lie to Garrison, he was assisting Alfortish and Parker's scheme to murder Garrison.

On September 22, 2020, Parker murdered Garrison as part of a scheme with **HARRIS** and Alfortish to prevent Garrison from further cooperating with the federal government and exposing the scheme to stage collisions. Shortly before the murder, **HARRIS** saw Parker in possession of a firearm, mask, and gloves that **HARRIS** believed Parker would use to murder Garrison. Thus, it was reasonably foreseeable to **HARRIS** that a firearm would be used to murder Garrison. After the murder, Parker told **HARRIS** that he murdered Garrison and that Alfortish paid him for the murder.

AUSA
Defendant
Defense Counsel

Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **HARRIS**, and it is not a complete statement of all facts described by **HARRIS** to the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for **HARRIS's** plea of guilty to the charged offense.

_____   1/8/2025
Matthew R. Payne              Date
Brian M. Klebba
Mary Katherine Kaufman
Assistant United States Attorneys
J. Ryan McLaren
Trial Attorney

_____   1/8/25
Christopher Murell            Date
Meghan Matt
Counsel for Ryan J. Harris

_____   1/8/25
Ryan J. Harris                Date
Defendant

AUSA
Defendant
Defense Counsel